**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **JAMIA L. CAIN**<br>**a/k/a JAMIA L. THOMAS**,<br>6421 Piercefield Dr.<br>Mayfield Heights, OH 44143<br><br>        Plaintiff,<br><br>   v.<br><br>**NATIONSTAR MORTGAGE LLC**<br>**d/b/a RIGHTPATH SERVICING and**<br>**RUSHMORE SERVICING**,<br>c/o Corporation Service Company<br>1160 Dublin Rd., Ste. 400<br>Columbus, OH 43215<br><br>      -and-<br><br>**LAKEVIEW LOAN SERVICING, LLC**,<br>c/o Corporation Service Company<br>1160 Dublin Rd., Ste. 400<br>Columbus, OH 43215<br><br>        Defendants. | Case No.<br><br>Judge<br><br><br><br>__**COMPLAINT FOR DAMAGES**__<br><br>__**JURY DEMAND ENDORSED HEREON**__ |

Plaintiff Jamia L. Cain a/k/a Jamia L. Thomas ("Cain" or "Plaintiff"), through counsel, for her *Complaint for Damages* against Defendants Nationstar Mortgage LLC d/b/a RightPath Servicing and Rushmore Servicing ("Nationstar") and Lakeview Loan Servicing, LLC ("Lakeview") (collectively, "Defendants"), states as follows:

**WHY CAIN IS BRINGING THIS CASE**

1.     Cain was entitled to receive a Federal Housing Administration (FHA) permanent modification despite the fact that the resulting monthly payment would not go down. Defendants' failure to approve and implement such a modification resulted in Cain defending against an unnecessary foreclosure action. Defendants, through their actions and the actions of

and their foreclosure counsel in the servicing Cain's mortgage loan, subsequently violated federal law. As a result of Defendants' conduct, Cain incurred improper fees to her loan, legal costs and fees, significant delay in securing a permanent modification, credit damages, and severe emotional distress.

## PARTIES, JURISDICTION, AND VENUE

2. Cain is the owner of residential real property, located at and commonly known as 6421 Piercefield Dr., Mayfield Heights, OH 44143 (the "Home").

3. Cain currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

4. Cain executed a promissory note (the "Note") as well as a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

5. Nationstar[1] is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 8950 Cypress Waters Blvd., Dallas, TX, 75019-4620.

6. Nationstar is the subservicer of the Loan and has acted in such capacity at all times relevant to the allegations in this Complaint.

7. Lakeview is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 4425 Ponce De Leon Blvd., 5th Fl., Coral Gables, FL, 33146.

8. Lakeview is the master servicer of the Loan and has acted in such capacity at all times relevant to the allegations in this Complaint.

---

[1] Subservicing of the Loan was transferred from Nationstar's RightPath Servicing brand name to Nationstar's Rushmore Servicing brand name effective February 20, 2024.

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

10.      This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

11.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

12.      This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* ("Regulation X").

13.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14.      Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

15.      Cain asserts claims for relief against Defendants for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

16.      The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

17.      Defendants are each a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

18.     RESPA allows for vicarious liability and Lakeview is responsible for the actions of its subservicer Nationstar. *See Bennett v. F.S.B.*, No. 2:23-cv-00155-DCN, 2023 U.S. Dist. LEXIS 148684 (D. Idaho Aug. 21, 2023); *Feldmann v. Lakeview Loan Servicing LLC*, No. C20-580 MJP, 2021 U.S. Dist. LEXIS 80336, at *13-14 (W.D. Wash. Apr. 27, 2021); *Rouleau v. US Bank, N.A.*, No. 14-CV-568-JL, 2015 U.S. Dist. LEXIS 50969, at *20 (D.N.H. Apr. 17, 2015).

19.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

20.     Defendants are each subject to the requirements of RESPA and Regulation X, and they do not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

21.     The Loan is secured by the Home which is Cain's principal residence. 12 C.F.R. § 1024.30(c)(2).

22.     Cain has a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

23.     Cain also asserts statutory claims against Defendants for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

## FACTUAL BACKGROUND

### FHA Mortgages and the Regulations of the HUD Secretary

24.     Every residential mortgage loan that is insured by the FHA, including the Loan, contains substantially similar contractual provisions requiring lenders to comply with the rules

and regulations promulgated by the Secretary ("Secretary") of the United States Department of Housing and Urban Development ("HUD").

25.     Pursuant to 12 U.S.C. § 1715u(a), the Secretary has the authority to promulgate regulations concerning the loss mitigation options available to borrowers in default on their FHA-insured mortgage obligations. That statutory provision reads:

> Upon default or imminent default, as defined by the Secretary of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including but not limited to actions such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure, as required, but not including assignment of mortgages to the Secretary under section 1710(a)(1)(A) of this title) or subsection (c), as provided in regulations by the Secretary.

12 U.S.C. § 1715u(a).

26.     The Secretary's rules and regulations relative to the servicing of FHA-insured mortgage loans for single family homes—such as the Mortgage—are set forth in the FHA's *Single Family Housing Policy Handbook 4000.1* ("SF Handbook").

27.     The Loan is insured by the FHA and is required to be serviced in accordance with FHA requirements and all applicable laws including the HUD guidelines contained in the SF Handbook.

28.     The SF Handbook requires a mortgagee to ensure all mortgages insured by the FHA that are delinquent are serviced in accordance with FHA requirements and all applicable laws. SF Handbook 4000.1 at III.A.2.a.ii, March 31, 2022.

29.     Further, HUD regulations require mortgagees that sell FHA-insured mortgages to "utilize HUD's Loss Mitigation Options to avoid foreclosure, when feasible." HUD 4000.1 III.A.2.j., September 26, 2022.

30.     The Secretary and HUD limit mortgagees' rights in the case of payment defaults through their policies pertaining to loss mitigation as contained in the SF Handbook. SF Handbook at III.A.2.r.ii(C)(1)(a)-(b), July 12, 2022 (requiring mortgagees to perform a complete review of borrowers' applications for loss mitigation options before proceeding to a foreclosure sale).

31.     Due to the Presidentially-Declared COVID-19 National Emergency, the Secretary and HUD updated the SF Handbook to require mortgagees to review borrowers for certain home retention options without a Borrower having to submit a complete loss mitigation application. *See*, *inter alia*, SF Handbook at III.A.2.o., September 26, 2022.[2]

32.     One such category of loss mitigation options is referred to as "COVID-19 Recovery Loss Mitigation Options" ("COVID-19 Recovery Options") which were to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the [Principal and Interest ("P&I")] portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

33.     Mortgagees must review all borrowers for COVID-19 Recovery Options:

a.  If the borrower was in a COVID-19 forbearance, no later than the earlier of one hundred twenty (120) days of the borrower's completion or expiration of a COVID-19 forbearance plan;

b.  If the borrower was not in a COVID-19 forbearance, when the borrower is 90 or more days delinquent and the borrower affirms they have been negatively impacted by COVID-19 and

---

[2] On February 13, 2023, HUD published Mortgage Letter 2023-03 which had to be implemented no later than April 30, 2023. A copy of Mortgage Letter 2023-03 is attached as **Exhibit 1**. Through this letter, all "FHA-HAMP Options are temporarily suspended and must not be offered through October 30, 2024. Mortgagees must evaluate all Borrowers for the COVID-19 Recovery Home Retention Options." *See* Exhibit 1. That is, the COVID-19 Recovery Home Retention Options became the exclusive loss mitigation options available for FHA Loans.

within 120 days from the date of a Borrower's request for loss mitigation.

SF Handbook at III.A.2.o.iii.(B)(1)-(2).

34.     Of note, "The COVID-19 Recovery Options are not incentivized for Mortgagees" meaning that, unlike with other loss mitigation options, a mortgagee does not receive any incentive from HUD for offering and entering borrowers into COVID-19 Recovery Options. SF Handbook at III.A.2.o.iii.(A).

35.     The COVID-19 Recovery Options are not optional and mortgagees are required to provide these options.

36.     In reviewing borrowers for COVID-19 Recovery Options, the first step in the "waterfall" is to see if a borrower qualifies for a "Standalone Partial Claim" ("SPC") to reinstate their mortgage and resume making their contractual mortgage payments. SF Handbook at III.A.2.o.iii.(C)(1).

37.     If a borrower does not qualify for a "Standalone Partial Claim", however, "the Mortgagee *must review* the Borrower for the COVID-19 Recovery Modification" ("Recovery Modification"). *See* SF Handbook at III.A.2.o.iii.(C)(2) (emphasis added).

38.     The Recovery Modification is a 360-month or 480-month[3] Loan Modification, which must include a Partial Claim, if Partial Claim funds are available. The COVID-19 Recovery Modification ***targets a reduction in the P&I portion of the Borrower's monthly Mortgage Payment***" aiming to achieve a "25 percent reduction to the P&I portion of the Borrower's monthly Mortgage Payment" (the "Target Payment"). SF Handbook at III.A.2.o.iii.(C)(2)(a) (emphasis added).

---

[3] On March 8, 2023, HUD published Mortgage Letter 2023-06. A copy of Mortgage Letter 2023-06 is attached as **Exhibit 2**. Through this letter, HUD introduced the 480-month Recovery Option which was required to be implemented no later than May 8, 2023. Prior to this point in time, the only term length for the Recovery Modification was 360 months.

39.    The *only* eligibility requirements for a Recovery Modification are that the mortgagee must ensure that: (1) the borrower indicates they have the ability to make the modified monthly payment; and (2) the borrower resides in the property secured by the mortgage. *See* SF Handbook at III.A.2.o.iii.(C)(2)(b).

40.    There are a series of steps that a mortgagee must apply in attempting to reach the Target Payment and once the Target Payment is achieved, there is no need to utilize any subsequent steps:

    a. "Step 1 – Calculate Partial Claim Availability… The Mortgagee must determine the maximum Partial Claim amount available for a COVID-19 Recovery Modification."

    b. "Step 2 – Arrearages… The Mortgagee must calculate the arrearages… The Mortgagee must ensure that all Late Charges and penalties are waived. Mortgagees are not required to waive Late Charges and penalties, if any, accumulated prior to March 1, 2020."

    c. "Step 3 – Modify the Rate and Term of the Mortgage… The Mortgagee must then extend the term to 360 months and calculate the modified Mortgage Payment. The interest rate of the modified Mortgage is no greater than the most recent [Primary Mortgage Market Survey ("PMMS") Rate for 30-year fixed rate conforming Mortgages (U.S. average), rounded to the nearest one-eighth of 1 percent (0.125 percent) as of the date the Borrower is offered a COVID-19 Recovery Modification."

    d. "Step 4 – Principal Deferment… If the target payment is not achieved, the Mortgagee must apply the remaining Partial Claim funds, if any, as a principal deferment, to achieve the target payment with the modified Mortgage."

*See* SF Handbook at III.A.2.o.iii.(C)(2)(c).

41.    Prior to the implementation of Mortgagee Letter 2023-06, the SF Handbook required that even if the Target Payment is not achieved through the aforementioned steps, "Step 7"—previously "Step 5" before the implementation of Mortgage Letter 2023-06—requires that

"the Mortgagee **must offer** the Borrower **the lowest monthly P&I payment achieved under the COVID-19 Recovery Modification**. If the Borrower affirms that they can make the offered payment, then the Mortgagee must complete that option." *See* SF Handbook at III.A.2.o.iii.(C)(2)(c) (emphasis added).

42.     Following the implementation of Mortgagee Letter 2023-06, the SF Handbook requires:

> If the Mortgagee cannot achieve the target payment using the above steps, ***then the Mortgagee must offer the Borrower the lowest monthly P&I payment achieved under the COVID-19 Recovery Modification*** or, if the P&I monthly payment increases under the COVID-19 Recovery Modification and the COVID-19 Standalone Partial Claim is available, the COVID-19 Standalone Partial Claim. ***If the Borrower affirms that they can make the offered payment, then the Mortgagee must complete that option.***

*See* SF Handbook at III.A.2.o.iii.(C)(2)(c) (emphasis added).

43.     In short, under the SF Handbook, both before and after the implementation of Mortgagee Letter 2023-06, while a Recovery Modification requires a mortgagee to *attempt* to achieve the Target Payment, it is not *required* to achieve the Target Payment or achieve *any reduction* in the P&I portion of a borrower's monthly payment—while a reduction in the P&I portion of a borrower's monthly payment is attempted and desirable, it is not *required* in order for a mortgagee to offer a Recovery Modification.

44.     Again, "COVID-19 Recovery Options" are designed to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and _may reduce_ the P&I" portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See* SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

45.     There is no ambiguity in the plan language of the aforementioned provisions and reasonable minds could not come to any differing conclusion than that mortgagees must offer a Recovery Modification even if the payment does not decrease.

### Loss Mitigation and the Foreclosure Case

46.     On or about June 14, 2016, Cain and her ex-husband Anthony W. Thomas ("Thomas") obtained the Loan from non-party American Midwest Mortgage Corporation ("AMMG"). On or about July 29, 2022, AMMG assigned the Mortgage to Lakeview.

47.     On or about September 24, 2019, Cain acquired sole title to the Home as a result of a final divorce decree between Cain and Thomas.

48.     In or around 2020, Cain suffered various life-changing events, including, but not limited to, the divorce and the COVID-19 pandemic.

49.     As a result, Cain applied for a mortgage forbearance to postpone the monthly mortgage payments, which had previously been paid consistently and without delay.

50.     Prior subservicer Community Loan Servicing, LLC transferred subservicing of the Loan to Nationstar effective June 1, 2022.

51.     In or around 2022, Cain began working for a new company and her annual income increased.

52.     With the increase in annual income, Cain decided to end the forbearance and wished to resume making her monthly mortgage payments to Defendants.

53.     Cain attempted to make her monthly mortgage payments through Nationstar's website, but received the following message: "Attention: Your account is not eligible to make payments. Please call us at 833-685-2590 for assistance."

54.     Cain contacted Nationstar by telephone and was instructed that she could not make monthly payments until the "paperwork" was reviewed, processed, and updated in Nationstar's system of record.

55.     Nationstar failed to properly process the "paperwork" and Cain was prohibited from resuming her monthly mortgage payments. Cain made many unsuccessful attempts to resolve this issue.

56.     On or about December 22, 2022, Nationstar sent correspondence stating that Cain was denied for a Recovery Modification, which Nationstar identified as an "FHA Disaster Modification" because of an "Insufficient Monthly Payment Reduction", specifically stating "[t]he required modification terms would result in a principal and interest mortgage payment that is greater than your current principal and interest payment and therefore does not meet the requirements of the program" (emphasis added) (the "2022 Denial"). A copy of the 2022 Denial is attached as **Exhibit 3**.

57.     As discussed, *supra*, there is no requirement that the P&I portion of a borrower's payment be reduced through a Recovery Modification as the only eligibility requirements are that: (1) The borrower indicates they can make the modified monthly payment; and (2) the borrower resides in the property secured by the mortgage. *See* SF Handbook at III.A.2.o.iii.(C)(2)(b).

58.     The 2022 Denial of Cain for eligibility for a Recovery Modification was improper as Defendants' denial was based upon an eligibility requirement that does not exist.

59.     With the 2022 Denial, Cain was at risk of foreclosure and of the loss of the Home.

60. On or about February 26, 2023, Lakeview filed a foreclosure action in the Cuyahoga County Court of Common Pleas, Case No. CV-23-975715 (the "Foreclosure Case"). A copy of the docket sheet for the Foreclosure Case is attached as **Exhibit 4**.

61. On or about May 17, 2023, Cain, through counsel, submitted a facially complete loss mitigation package with supporting documentation (the "Application") to Lakeview's counsel in the Foreclosure Case, Tamara Gurchik ("Gurchik") of the LOGS Legal Group ("LOGS").

62. Neither Gurchik nor Defendants acknowledged receipt of the Application in a timely manner or provided any status update.

63. On June 15, 2023, Cain, through counsel, sent a follow up email to Gurchik requesting the status of the review.

64. On or about June 26, 2023, the state court entered a judgment entry stating that Lakeview was unable to proceed with the Foreclosure Case due to loss mitigation review and ordering that the case would only be reinstated upon a motion filed by Lakeview. *See* Exhibit 4.

65. On July 27, 2023, Cain, through counsel, sent a second follow up email to Gurchik requesting the status of the review.

66. Gurchik did not respond to Cain's counsel until July 31, 2023, wherein she stated: "I've asked my client for a status update – right now the file is in loss mitigation in my office, but I don't have anything more specific than that – I will send over a better update when it's available."

67. Despite promising a "better update," Gurchik again failed to communicate with Cain's counsel.

68.     On August 16, 2023, Cain, through counsel, sent a third email to Gurchik asking for a status update and attached two letters that were hand delivered to Cain by Nationstar.

69.     Gurchik failed to respond to Cain until September 18, 2023, wherein she stated: "Very sorry I'm just now getting back to your email – this file just came across my desk and it appears loss mitigation was denied back at the end of June, see the attached letter if you haven't already, I am just seeing this today for the first time. Unfortunately, I don't have any additional indication of what information was missing, or I'd pass that along as well."

70.     With the September 18, 2023 email, Gurchik provided Cain with, for the first time, a copy of a denial letter dated June 27, 2023 (the "2023 Denial"). A copy of the 2023 Denial is attached as **Exhibit 5**.

71.     The 2023 Denial was allegedly mailed to Cain at the Home, however, Cain did not receive it, and on information and belief, neither Defendants nor LOGS provided Cain with a copy before September 18, 2023. *See* Exhibit 5.

72.     The 2023 Denial states: "Unfortunately, we were unable to evaluate you for assistance options because you did not provide us with all requested documents within the timeframe required. A notice listing the specific documentation needed, with due dates and expiration dates, was previously sent to you." *See* Exhibit 5.

73.     Despite the 2023 Denial claiming that a notice was sent to Cain, Cain did not receive such a notice, and on information and belief, neither Defendants nor LOGS provided Cain with a copy of the notice.

74.     As Cain would later discover in December 2023, Nationstar generated a letter dated May 20, 2023 that requested an "Affordability Questionnaire."

75.     On or about September 19, 2023, Lakeview filed a *Motion to Reinstate Case to the Court's Active Docket* in the Foreclosure Case. *See* Exhibit 4.

76.     In the Motion to Reinstate, Lakeview stated that loss mitigation had been unsuccessful, but failed to explain to the state court that the reason it was unsuccessful was solely attributable to Defendants and LOGS.

77.     On or about September 25, 2023, the state court reinstated the Foreclosure Case and referred the matter to mediation. *See* Exhibit 4.

78.     On or about January 16, 2024, Defendants offered Cain a FHA Modification Agreement and Partial Claim Note (the "Modification") with the following terms:

> Partial Claim: $64,406.26
> Monthly P&I Payment: $1,109.07
> Interest Rate: 5.1250%
> Amortization Duration: 480 months
> Modified Interest Bearing Principal Balance: $226,108.25

A copy of the Modification is attached as **Exhibit 6**.

79.     That is, despite *nothing* changing as to the eligibility guidelines for Recovery Modifications, Defendants approved Cain for a Recovery Modification despite the modified payment increasing.

80.     On or about February 13, 2024, Cain timely and properly executed and returned the paperwork for the Modification.

81.     On April 29, 2024, Lakeview filed a notice of voluntary dismissal without prejudice, which the state court granted on the same day. *See* Exhibit 4.

82.     On April 30, 2024, Cain filed a notice of voluntary dismissal of her counterclaims without prejudice, which the state court granted on May 8, 2024. *See* Exhibit 4.

### Cain's Attempts to Obtain Information Relating to
### the Loan and Have Nationstar Correct Errors

83.     For all times relevant, Nationstar has designated the following address for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address"):

> Attn: Customer Relations
> PO Box 619098
> Dallas, TX 75261-9741

84.     On or about December 1, 2023, Cain, through counsel, sent a request for information pursuant to 12 C.F.R. § 1024.36 (the "RFI") to Nationstar at the Designated Address. A copy of the RFI and tracking information evidencing delivery of the RFI are attached as **Exhibit 7**.

85.     The RFI made fourteen (14) distinct requests and sought information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items. *See* Exhibit 7.

86.     Nationstar received the RFI at the Designated Address on December 4, 2023. *See* Exhibit 7.

87.     On or about January 9, 2024, Nationstar sent boilerplate correspondence to Cain in response to the RFI (the "RFI Response"). A copy of the RFI Response, without enclosures, is attached as **Exhibit 8**.

88.     Through the RFI Response, Nationstar refused to provide information and documents concerning nine (9) of the fourteen (14) requests made by the RFI. *See* Exhibit 8.

89.     As a direct and proximate result of the deficient RFI Response, on or about March 26, 2024, Cain, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 (the "NOE") to Nationstar at the Designated Address. A copy of the NOE, without enclosures, and tracking information evidencing delivery of the NOE #2 is attached as **Exhibit 9**.

90.     Through the NOE, Cain asserted that Nationstar committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) by failing to properly respond to the RFI and she made a renewed request for the information requested through the RFI. *See* <u>Exhibit 9</u>.

91.     Nationstar received the NOE at the Designated Address on April 1, 2024. *See* <u>Exhibit 9</u>.

92.     Nationstar failed to timely and properly acknowledge receipt of the NOE within five (5) business days of April 1, 2024, or by April 8, 2024.

93.     Nationstar failed to timely and properly respond to the NOE and the renewed request for information within thirty (30) business days of April 1, 2024, or by May 13, 2024.

## IMPACT AND DAMAGES

94.     Defendants' improper actions caused Cain to suffer from actual and proximate damages including, but not limited to:

a.  Legal fees, costs, and expenses incurred to take reasonable steps to defend the Foreclosure Case;

b.  Significant delay in the loss mitigation process, which would have been avoided had Defendants acted appropriately in relation to the loss mitigation processes for the Loan;

c.  Accrued interest, fees, and charges imposed on the Loan, including default servicing related fees since the issuance of the 2022 Denial for which Cain is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled and for which she will have to repay at 5.125%;

d.  Harm to Cain's credit, including being denied for credit opportunities, and the delay in the rehabilitation of her credit which would have been avoided had

Defendants acted appropriately in relation to the loss mitigation processes for the Loan;

e.  Legal fees, costs, and expenses to submit the RFI and NOE, described, *supra*, in a good faith attempt to obtain information concerning this matter or to have Defendants mitigate the harm caused to Cain to which she did not receive proper or adequate responses; and,

f.  Severe emotional distress driven by Defendants' failure to properly handle their review of Cain's eligibility for a loan modification, misrepresentations concerning the same, and other wrongful conduct related to the delay in the loss mitigation process, and by the justified fear that such blatant indifference would result in an eventual foreclosure sale of her Home unless she agreed to pay for amounts were not warranted, which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

**PATTERN AND PRACTICE OF NATIONSTAR'S
VIOLATIONS OF RESPA AND REGULATION X**

95.  Nationstar's actions are part of a pattern and practice of behavior in violation of Cain's rights and in abdication and contravention of Nationstar's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

96.  Nationstar has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

97.     Cain has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Nationstar engaged in similar conduct against other borrowers. In particular, Cain has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 10**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Nationstar has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

### COUNT ONE: AGAINST NATIONSTAR AND LAKEVIEW
### VIOLATIONS OF 12 C.F.R. § 1024.41(b) AND 12 U.S.C. § 2605(k)

98.     Cain restates and incorporates all of the allegations contained in paragraphs 1 through 97 in their entirety, as if fully rewritten herein.

99.     12 C.F.R. § 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

100.    12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

101.    12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

102.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

103. When Cain submitted the Application on or about May 17, 2023, there was no foreclosure sale scheduled.

104. The Application was not a "duplicative request" because Defendants had not previously evaluated or otherwise complied with 12 C.F.R. § 1024.41's requirements for a prior complete loss mitigation. *See* 12 C.F.R. § 1024.41(i).

105. Neither Defendants nor Gurchik, acting on behalf of Defendants, timely acknowledged receipt of the Application in violation of 12 C.F.R. § 1024.41(b)(2).

106. Gurchik's conduct, on behalf of Defendants, in failing to respond to Cain's status requests or otherwise failing to take action to complete the Application constitutes multiple violations of 12 C.F.R. § 1024.41(b)(1).

107. Defendants' conduct in failing to properly mail the letter dated May 20, 2023 that requested an "Affordability Questionnaire" constitutes a violation of 12 C.F.R. § 1024.41(b)(1).

108. Defendants' actions constitute a failure to exercise reasonable diligence in obtaining missing or incomplete information and/or documents to complete the Application in violation of 12 C.F.R. § 1024.41(b)(1) and 12 U.S.C. § 2605(k)(1)(E).

109. Lakeview, as the master servicer of the Loan, is responsible for Nationstar's actions as subservicer.

110. Defendants are responsible for the conduct of LOGS, as they delegated loss mitigation duties to LOGS.

111. Defendants' conduct caused Cain to suffer actual damages, as discussed, *supra*.

112. Defendants' conduct is believed to be part of a pattern and practice of behavior in conscious disregard for Cain's rights and in abdication of Defendants' obligations under RESPA and Regulation X.

113.    As a result of Defendants' conduct, they are liable to Cain for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

114.    Additionally, Cain requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

<u>**COUNT TWO: AGAINST NATIONSTAR**</u>
**VIOLATIONS OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)**

115.    Cain restates and incorporates all of the allegations contained in paragraphs 1 through 97 in their entirety, as if fully rewritten herein.

116.    "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

117.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

118.    Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

119.    A servicer must respond to a request for information by:

  (i)    Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

  (ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that

> the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

120. A servicer must properly respond to a request for information within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request. 12 C.F.R. § 1024.36(d)(2)(i)(B).

121. The RFI constitutes a request for information as defined by 12 C.F.R. § 1024.36(a) as it is a written request from Cain that included her name, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibit 7.

122. On or about December 1, 2023, Cain, through counsel, submitted the RFI to Nationstar at the Designated Address. *See* Exhibit 7.

123. The RFI made fourteen (14) distinct requests and sought information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items. *See* Exhibit 7.

124. Nationstar received the RFI at the Designated Address on December 4, 2023. *See* Exhibit 7.

125. On or about January 9, 2024, Nationstar sent the RFI Response to Cain. *See* Exhibit 8.

126. Through the RFI Response, Nationstar refused to provide information and documents concerning nine (9) of the fourteen (14) requests made by the RFI and instead provided the following inapplicable boilerplate language without specifically addressing Cain's requests: "Some information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and

confidential. Therefore, this information is considered outside the scope of information that must be provided." *See* Exhibit 8.

127.    There is no requirement that a request for information request information "directly to the servicing of the loan" and this is not a valid reason for failing to provide information to a borrower. *See* 12 C.F.R. § 1024.36(a); *see* 78 Fed. Reg. 10696, 10761 ("While the final rule does not require that servicers undertake the information request procedures in § 1024.36(c) and (d) for oral submissions, **it does not limit information requests to those related to servicing.**") (emphasis added).

128.    As such, all of the unfulfilled requests contained in the RFI requested information "with respect" to the Loan, and Nationstar should have responded with the relevant information and/or documents.

129.    Further, despite Nationstar stating in the RFI Response that "[s]ervicing matters include but are not limited to … [p]ayment assistance and modifications," Nationstar failed to respond to eight (8) requests for information and documents relating to loss mitigation. *See* Exhibit 8.

130.    Nationstar, as a result of using a boilerplate form response, wrongfully contends that a request for information must "identify [] specific servicing errors." *See* Exhibit 8. Notices of errors, not requests for information, must identify a cover error pursuant to 12 C.F.R. § 1024.35(b).

131.    Nationstar makes statements that the Loan "will continue to be serviced appropriate to its status" and "the payment history appears to be reported accurately to the main credit repositories," despite the RFI not asserting an error, supporting the notion that the RFI Response is a boilerplate form response. *See* Exhibit 8.

132.    The unfulfilled requests contained in the RFI do not bear any resemblance to the types of requests through which the CFPB provides guidance as to what constitutes a request that seeks proprietary, confidential, or privileged information. *See* Comment 1 to 12 C.F.R. § 1024.36(f)(1)(ii).

133.    Information or documents cannot be proprietary or privileged if Nationstar claims such information or documents were previously sent to Cain.

134.    As to the servicing notes, to the extent that such information may be included therein, such information and/or documentation can be withheld and/or redacted. The fact that some such information may be contained within the servicing notes does not wholly absolve Nationstar of its obligation to produce any of the requested servicing notes.

135.    As Nationstar has previously filed a complete and unredacted copy of servicing notes in federal court in a separate matter, its boilerplate claim that its servicing notes are proprietary and confidential is wholly unsupported.

136.    The RFI Response references a "Request for All Recorded Calls" and "debt validation request," although the RFI did not request any call recordings or request validation of any debt, further supporting that the RFI Response is a boilerplate form response. *See* <u>Exhibit 8</u>.

137.    Nationstar's actions constitute violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) and have caused Cain to suffer actual damages, as discussed, *supra*, including, but not limited to incurring attorneys' fees and postage costs associated with the preparing and sending of the NOE, which would not have been necessary but for Nationstar's failure to properly respond to the RFI.

138.    Further, Nationstar's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) caused Cain's attorneys' fees and costs associated with the preparation of the

RFI to metamorphose into damages. *Marais v. Chase Home Fin., LLC (Marais II)*, 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); s*ee Marais v. Chase Home Fin. LLC (Marais I)*, 736 F.3d 711, 721 (6th Cir. 2013).

139.   Nationstar's actions are part of a pattern and practice of behavior in conscious disregard for Cain's rights and in abdication of Nationstar's obligations under RESPA and Regulation X.

140.   As a result of Nationstar's actions, Nationstar is liable to Cain for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

141.   Additionally, Cain requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE: AGAINST NATIONSTAR**
**VIOLATIONS OF 12 C.F.R. § 1024.35(d)-(e) AND 12 U.S.C. § 2605(k)**

142.   Cain restates and incorporates all of the allegations contained in paragraphs 1 through 97 in their entirety, as if fully rewritten herein.

143.   "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

144.   Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

145.   Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for

purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

146.    Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

147.    A servicer must respond to a notice of error by either:

(A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

148.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1) within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error. 12 C.F.R. § 1024.35(e)(3)(i)(C).

149.    The NOE constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from Cain that included her name, mortgage loan account number, and property address and asserts an error that she believed to have occurred. *See* Exhibit 9.

150.    On or about March 26, 2024, Cain, through counsel, sent the NOE to Nationstar at the Designated Address. *See* Exhibit 9.

151. Through the NOE, Cain asserted that Nationstar committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) by failing to properly respond to the RFI and she made a renewed request for the information requested through the RFI. *See* Exhibit 9.

152. Nationstar received the NOE at the Designated Address on April 1, 2024. *See* Exhibit 9.

153. Nationstar failed to timely and properly acknowledge receipt of the NOE within five (5) business days of April 1, 2024, or by April 8, 2024, in violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k)(1)(E).

154. Nationstar failed to timely and properly respond to the NOE and the renewed request for information within thirty (30) business days of April 1, 2024, or by May 13, 2024, in violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k)(1)(C) and (E).

155. Nationstar did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Nationstar did not correct any errors as identified in the NOE.

156. Nationstar did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as Nationstar's refusal to acknowledge receipt of the NOE and respond to the errors asserted by the NOE indicates that it failed to perform a reasonable investigation into the errors alleged through the NOE.

157. Nationstar's actions constitute violations of 12 C.F.R. § 1024.35(d) and (e) and 12 U.S.C. § 2605(k)(1)(C) and (E) and has caused Cain's attorneys' fees and costs associated with the preparation of the NOE to metamorphose into damages. *See Marais I* and *Marais II*.

158. Nationstar's actions are part of a pattern and practice of behavior in conscious disregard for Cain's rights and in abdication of Nationstar's obligations under RESPA and Regulation X.

159.    As a result of Nationstar's actions, Nationstar is liable to Cain for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

160.    Additionally, Cain requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FOUR: AGAINST NATIONSTAR AND LAKEVIEW VIOLATIONS OF THE RMLA, R.C. 1322, *et seq.*

161.    Cain restates and incorporates all of the allegations contained in paragraphs 1 through 97 in their entirety, as if fully rewritten herein.

162.    Defendants are each subject to the requirements of the RMLA and do not qualify for the exemptions listed in R.C. 1322.04.

163.    "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

164.    Defendants are each a mortgage servicer under the RMLA as each "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

165.    Defendants, as mortgage servicers, are required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

166.    Nationstar is a registrant under the RMLA, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License No. RM.850005.000. R.C. 1322.01(HH).

167.    Lakeview is a registrant under the RMLA, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License No. RM.850153.00. R.C. 1322.01(HH).

168.    Cain is a "buyer" as defined by R.C. 1322.01(I), as she is an individual whose loan is serviced by mortgage servicers, Lakeview and Nationstar.

**(R.C. 1322.40)**

169.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

170.    Defendants' 2022 Denial of Cain for eligibility for a Recovery Modification was improper as such denial was based upon an eligibility requirement that does not exist.

171.    Defendants violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by failing to allow Cain to make monthly mortgage payments before filing the Foreclosure Case.

172.    Defendants violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by failing to provide Cain with a Recovery Modification as required by the SF Handbook.

173.    Defendants' failure to exercise reasonable diligence during the loss mitigation process, as described in Count One, constitutes improper and dishonest dealings in violation of R.C. 1322.40(C).

174.    Nationstar's failure to properly respond to the information requests made by the RFI, as described in Count Two, constitutes improper dealings in violation of R.C. 1322.40(C).

175.    Nationstar's failure to perform a reasonable investigation into the errors asserted by the NOE, as described in Count Three, constitutes improper dealings in violation of R.C. 1322.40(C).

176.    The false or misleading representations of Gurchik that she asked Defendants for a status update, combined with the failure to timely communicate status updates to Cain, constitutes improper and dishonest dealings in violation of R.C. 1322.40(C).

177.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations. R.C. 1322.40(B).

178.    Nationstar violated R.C. 1322.40(B) by making false or misleading representations in the 2022 Denial that Cain did not and could not qualify for a Recovery Modification because the P&I portion of her monthly mortgage payment would not decrease under such a modification.

179.    Gurchik's failure to timely acknowledge receipt of the Application in violation of 12 C.F.R. § 1024.41(b)(2), on behalf of Defendants, constitutes an omission of statements required by federal law in violation of R.C. 1322.40(B).

180.    The failure of Defendants and/or Gurchik, on behalf of Defendants, to properly provide notice requesting Cain fill out and return an "Affordability Questionnaire" or otherwise failing to take action to complete the Application constitutes omissions of statements required by federal law in violation of R.C. 1322.40(B).

181.    The failure of Defendants and/or Gurchik, on behalf of Defendants, to properly provide a copy of the 2023 Denial to Cain, constitutes an omission of statements required by federal law in violation of R.C. 1322.40(B).

182.    The false or misleading representations of Gurchik that she asked Defendants for a status update and would "send over a better update," combined with the failure to timely and properly communicate concerning the loss mitigation process, constitutes false or misleading statements of a material fact or false promises regarding a material fact in violation of R.C. 1322.40(B).

183.    Nationstar violated R.C. 1322.40(B) by making false or misleading representations to Cain in the 2023 Denial, that "[a] notice listing the specific documentation needed, with due dates and expiration dates, was previously sent to you." *See* Exhibit 5.

184.    Defendants' conduct as a whole constitutes engaging in a continued course of misrepresentations in violation of R.C. 1322.40(B).

185.    As a result of Defendants' conduct, Defendants are liable to Cain for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

**(R.C. 1322.45)**

186.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and: (2) Follow reasonable and lawful instructions from the buyer; (3) Act with reasonable skill, care, and diligence; [and] (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.] R.C. 1322.45(A).

187.     A  registrant,  licensee,  or  person  required  to  be  registered  or  licensed  under  R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

188.     Defendants'  violations  of  RESPA  and  Regulation  X  constitute  violations  of  R.C. 1322.45(A).

189.     Defendants  violated  R.C.  1322.45(A)(2)  by  failing  to  follow  Cain's  reasonable request to make monthly mortgage payments before the filing of the Foreclosure Case.

190.     Defendants  violated  R.C.  1322.45(A)(2)  by  failing  to  follow  Cain's  reasonable request  for  COVID-19  Recovery  Options,  specifically  for  a  Recovery  Modification  pursuant  to the applicable guidelines, which resulted in Defendants improperly denying Cain for the same.

191.     Defendants violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill,  care,  and  diligence  and  in  good  faith  and  with  fair  dealing  by  failing  to  allow  Cain  to  make monthly mortgage payments before the filing of the Foreclosure Case.

192.     Defendants violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill,  care,  and  diligence  and  in  good  faith  and  with  fair  dealing  by  failing  to  provide  Cain  with  a Recovery Modification as required by the SF Handbook.

193.     Defendants violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill,  care,  and  diligence  and  in  good  faith  and  with  fair  dealing  when  handling  the  Application and delegating servicing duties to Gurchik.

194.     Nationstar violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill,  care,  and  diligence  and  in  good  faith  and  with  fair  dealing  by  misrepresenting  to  Cain  that she  did  not  qualify  for  a  Recovery  Modification  because  the  P&I  portion  of  her  monthly mortgage payment would not decrease under such a modification.

195.    Nationstar violated R.C. 1322.45(A), (A)(3), and (A)(4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing when handling the RFI and NOE, as discussed, *supra*.

196.    As a result of Defendants' conduct, Defendants are liable to Cain for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52. R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Jamia L. Cain a/k/a Jamia L. Thomas respectfully requests that this Court enter an Order granting Judgment against Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing LLC and Rushmore Servicing as follows:

A.    Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Four;

B.    Statutory damages of Two Thousand Dollars ($2,000.00) per violation of RESPA as contained in Counts One through Three;

C.    Costs and reasonable attorneys' fees as to Counts One through Four;

D.    Punitive damages to the extent allowed by law for the allegations contained in Count Four; and,

E.    Such other relief which this Court may deem appropriate.

**WHEREFORE** Plaintiff Jamia L. Cain a/k/a Jamia L. Thomas respectfully requests that this Court enter an Order granting Judgment against Defendant Lakeview Loan Servicing, LLC as follows:

A.    Actual damages in an amount to be determined at trial for the allegations contained in Counts One and Four;

B.      Punitive damages to the extent allowed by law for the allegations contained in Count Four;

C.      Costs and reasonable attorneys' fees as to Counts One and Four; and,

D.      Such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiff Jamia L. Cain a/k/a Jamia L. Thomas respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

/s/ *David L. Lash*
DAVID L. LASH (0031571)
23811 Chagrin Boulevard, Suite 228
Beachwood, Ohio 44122
216.464.9950
davidlash@lashlaw.net

*Counsel for Plaintiff Jamia L. Cain a/k/a Jamia L. Thomas*